**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-cr-19 (RCL)** |
| **v.** | : | |
| | : | |
| **GREGORY RICHARD PURDY, JR.,** | : | |
| **MATTHEW PURDY, and** | : | |
| **ROBERT TURNER,** | : | |
| | : | |
| **Defendants.** | : | |

**MOTION IN *LIMINE* TO PRECLUDE ENTRAPMENT RELATED DEFENSES AND
ARGUMENTS AND EVIDENCE ABOUT ALLEGED LAW ENFORCEMENT
INACTION**

**INTRODUCTION**

The government respectfully requests that the Court issue an order precluding Defendants Gregory Purdy, Matthew Purdy and Robert Turner from presenting evidence or argument for any of the following: (1) claims that they were entrapped, (2) that former President Trump (or any other Executive Branch official) gave permission for them to enter or attack the U.S. Capitol, which would raise the affirmative defenses of public authority or entrapment by estoppel, (3) claims that by allegedly failing to act, law enforcement made the Defendants' entry into the United States Capitol building or grounds or their conduct therein lawful; or (4) any assertion concerning alleged inaction by law enforcement unless the Defendants specifically observed or were otherwise aware of such conduct.

Motions in *limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (*quoting Bradley v. Pittsburgh Bd. of Educ*., 913 F.2d 1064, 1070 (3d Cir. 1990)). The government presents these issues to the Court in an effort to prepare this case for an efficient trial.

For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

**FACTUAL BACKGROUND**

I.      DEFENDANTS' ACTIONS

The Defendants are charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. Even a cursory review of the events of that day, and the circumstances surrounding entry into the United States Capitol demonstrates that no one who entered the building that day was ignorant of the egregious violation of law that was taking place. The Defendants' specific conduct, location, and circumstances demonstrates their intent to engage in disorderly and disruptive conduct in the Capitol and its grounds, as well as commit the other violations charged.

Two of the defendants—Gregory Purdy and Robert Turner—are charged with three felony charges (Civil Disorder in violation of 18 U.S.C. § 231(a)(3), Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), and Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2)) —and two misdemeanor charges (Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4), and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F)).

Furthermore, all three defendants—Gregory Purdy, Matthew Purdy and Robert Turner—are charged with four misdemeanors: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

On January 6, 2021, the Defendants attended the "Stop the Steal" rally, then joined the crowds that approached the Capitol on Pennsylvania Avenue, NW. They entered the restricted area on the west side of the Capitol.

At 2:01 p.m., the Defendants were part of a group of protestors that stood opposite a group of Metropolitan Police Department ("MPD") officers, some officers wore body-worn camera ("BWC") (*see* Figures 1 and 2). Gregory Purdy and Robert Turner yelled at the officers, while Matthew Purdy appeared to film the interaction with a red cellphone. At one point, Gregory Purdy appeared to yell at officers, "You gotta let us by . . . You don't have to listen to them . . . tell your guys . . ." The crowd then appeared to push forward against the officers. The officers leave the area.



*Figure 1, Gregory Purdy (circled in red), Matthew Purdy (circled in yellow).*



*Figure 2, Gregory Purdy (circled in red), Robert Turner (circled in green), and Matthew Purdy (circled in yellow)*

  The Defendants next approached the stairs on the west side of the Capitol. At this location, there were scaffoldings that were being set up for the upcoming inaugural ceremonies. There were barriers preventing the public from entering the west side of the Capitol, the scaffoldings and the Upper West Terrace of the Capitol. Also, law enforcement tried to prevent rioters from entering the scaffoldings or the stairs to get to the Upper West Terrace, but rioters breached the law enforcement lines and barriers. Rioters ripped the white covering off part of the scaffoldings and climbed through the scaffolding and up the stairs to the Upper West Terrace.

  The Defendants passed rioters screaming and climbing on the bannisters and scaffolding. The stairs led to the Upper West Terrace. Officers held a line of barricades at the top of the stairs while the rioters came up the stairs. At approximately 2:09 p.m. rioters pushed the line of officers back from the top of the staircase. In footage from an open-source video, the officers held onto the barricades and told the rioters to "Stop". Gregory Purdy and other rioters pushed the barricades over (*see* Figure 3). As the officers fell back, the Defendants ran onto the Upper West Terrace (*see* Figure 4).



*Figure 3, Gregory Purdy (circled in red), Matthew Purdy (circled in yellow)*



*Figure 4, Robert Turner (circled in green)*

As shown in U.S. Capitol Police surveillance footage, Defendants crossed the Upper West Terrace going towards the Senate side. Gregory Purdy and Matthew Purdy ran to the Senate Wing Doors (*see* Figure 5). Robert Turner crossed the Upper West Terrace to the North, then returned and went to the Senate Wing Door (*see* Figure 6).



*Figure 5, Upper West Terrace, Gregory Purdy (circled in red)*



*Figure 6, Upper West Terrace, Robert Turner (circled in green)*

At the far end of the Upper West Terrace picture above, there is a set of stone arches. Inside the arches, there is a doorway ("Senate Wing Doorway") that is flanked by two sets of windows. This doorway is an emergency exit, and not a public entrance to the Capitol.

At approximately 2:13 p.m., protesters from the outside of the Capitol broke the windows and climbed through one of the broken windows beside the Senate Wing Doorway. Seconds later, one of the protesters that entered through the broken window tried to push open the Senate Wing Doorway from the inside. Two other protesters then kicked the emergency exit door open. An alarm was set off when the door was opened. Rioters began to enter through the emergency doors. Protestors broke open the second window and climbed inside through the second broken window. Within less than thirty second, at approximately 2:13:52 p.m., the Defendants entered through the broken door and walked down through the Capitol (*see* Figure 7).



*Figure 7, Gregory Purdy (circled in red), Matthew Purdy (circled in yellow), and Robert Turner (circled in green)*

At approximately 2:15 p.m., Gregory Purdy ran past an officer towards an exit door leading to the plaza on the East side of the Capitol. Seconds later, Gregory Purdy re-entered the Capitol through that door and ran back past the officer and rejoined Matthew Purdy and Robert Turner down the hallway. At approximately 2:16 p.m., the Defendants exited the Capitol through the Senate Carriage Door, which leads to the plaza on the East side of the Capitol. (*see* Figure 8).



*Figure 8*

The Defendants did not, however, leave the Capitol's restricted area.  At approximately 3:24 p.m., Gregory Purdy and Robert Turner stood directly opposite of a line of MPD officers and in front of a large group of rioters (*see* Figure 9). The MPD officers prevented the rioters from re-entering the Upper West Terrace, on the West side of the Capitol.  Gregory Purdy is recorded on MPD Body Worn Camera (BWC) saying to the officers: "We're on the same team. You don't have to take these orders." Robert Turner said to the officers, "Stop taking orders. We're not here – we're not here to kill or hurt anybody, we're making our voice heard. You should be behind us." Gregory Purdy later said to the officers, "Are you guys going to let us in, or are we gonna have to push in?" At various times, Gregory Purdy turned back to the crowd of rioters and appeared to wave others in the crowd behind him to move forward. At approximately 3:30 p.m., Gregory Purdy yelled to the crowd, "Guys, we all gotta go at once." With raised hands, Gregory Purdy then counted down from ten to one; upon reaching one, Gregory Purdy ran forward into an MPD Officer and pushed his way past the police line (*see* Figure 10). Several MPD officers chased Gregory Purdy and restrained him.



*Figure 9, Gregory Purdy (circled in red), Robert Turner (circled in green)*



*Figure 10*

Footage from another MPD Officer's BWC footage showed that after Gregory Purdy ran forward, Robert Turner followed Purdy, and ran forward and pushed against the officers (*see* Figures 11, 12). Turner pushed into a MPD Officer in an attempt to get past the officer, but the MPD officer and other officers wrestled with Turner and pushed him back into the crowd of rioters.



*Figure 11*



*Figure 12*

After the riot, Gregory Purdy, using the Instagram account under the name of GREGG54321, posted several narratives about his actions on January 6, 2021. One of the clips read in part, "I got my Ass kicked by 10 cops, pepper sprayed, tear gassed, and a ripe ass beating with the Batons . . . More info to come! Videos of inside the capital building with @mattcpurdy and @bobtheplumbr1982 . . . I LOVE MY COUNTRY!!!!! STOP THE STEAL!!!!" In a second clip, Gregory Purdy posted "Today my group and I were key players in conducting peaceful pushes. The game plan was to talk the officers [sic] and tell the [sic] to STOP FOLLOWING ORDERS AND UPHOLD THE CONSTITUTION. . . . When they didn't listen we pushed through (without hitting them of course) we did these peaceful pushes all the way into the capital [sic]

10

building . . ."  In a third clip, Gregory Purdy is shown amongst a group of rioters who are stepping over metal barricades and moving towards the U.S. Capitol, with a comment that read, in part: "This was just after we pushed the top level gates over. The cops were swinging their batons trying to keep us back. (Like 30 of them) But after talking to them telling them to "UPHOLD THE CONSTITUTION" that helped a lot because instead of fighting us super hard like the last ones on the previous slide we easily pushed through them and they all ran !!!"

## ANALYSIS

I.   THIS COURT SHOULD PRECLUDE THE DEFENDANTS FROM ARGUING ENTRAPMENT, AND THE RELATED AFFIRMATIVE DEFENSES OF AN ENTRAPMENT BY ESTOPPEL OR A PUBLIC AUTHORITY DEFENSE.

The government moves in *limine* to prohibit the Defendants from making arguments or attempting to introduce irrelevant evidence that 1) they were entrapped, 2) that former President Trump (or any other Executive Branch official) gave permission for them to enter or attack the U.S. Capitol, which would raise the affirmative defenses of public authority or entrapment by estoppel, or 3) that the Defendants were enticed or entrapped by law enforcement in entering or attacking the U.S. Capitol.

Insofar as the Defendants may seek to claim that they were entrapped by law enforcement officers at the U.S. Capitol into committing some or all of the crimes with which they are charged, they should also be precluded from raising this defense as a matter of law at trial. The government is aware of no evidence that could support such a defense.  Therefore, absent a proffer as to how such a defense could arise at trial, the government seeks an order precluding the Defendants, through the introduction of evidence or counsel's questions or argument, from arguing or claiming that they were entrapped by law enforcement officers into committing the charged offenses.

"A valid entrapment defense has two related elements: government inducement of the crime and a lack of predisposition on the part of the defendant to engage in criminal conduct." *Matthews v. United States*, 485 U.S. 58, 63 (1988). A defendant arguing entrapment must show that "the criminal design originate[d]" with the law enforcement officers, "and [that] they implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce[d] its commission in order that they may prosecute." *Sorrells v. United States*, 287 U.S. 435, 442 (1932). "At a minimum, this requires a showing that the government agent actually solicited or suggested the criminal conduct." *United States v. Solofa*, 745 F.3d 1226 (D.C. Cir. 2014) (internal citations omitted); *United States v. Robinson*, No. CR 16-98 (CKK), 2021 WL 2209403, at *11 (D.D.C. May 31, 2021) (laying out case law as quoted above).

The Government alleges that the Defendants passed police perimeters and barricades into a restricted security area and active construction site, entered into the U.S. Capitol Building, all in an effort to knowingly enter a restricted building, i.e., the Capitol, to create disorder and disrupt the orderly conduct of Government business in the Capitol, and to parade and demonstrate within the Capitol. There is no evidence that any government agent or law enforcement officer induced the Defendants to commit any of these alleged crimes. And there is certainly no evidence that a law enforcement agent or officer "actually solicited or suggested the criminal conduct" to the Defendant. *Solofa*, 745 F.3d 1226. Absent any such evidence, a defendant may not present such an entrapment theory to the jury. *E.g., Robinson*, 2021 WL 2209403, at *11 (affirming denial of entrapment instruction when defendant "failed to point to any evidence" of entrapment).

In short, the conduct of the Defendants was plainly beyond any conduct that could be reasonably sanctioned, and they were not actively misled or entrapped into committing the alleged crimes. The Defendants should be prohibited from making arguments or attempting to introduce

non-relevant evidence—either through cross-examination or their own case-in-chief—that they had permission to commit any of the crimes charged or that they were was entrapped by law enforcement into doing so.

    A.    <u>This Court should preclude any entrapment by estoppel defense.</u>

Any assertion that the Defendants cannot be held criminally liable because their actions were authorized by former President Trump must be precluded because, as former Chief Judge Beryl Howell has recognized, "following orders, without more, can[not] transform an illegal act into a legal one" and "even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability." *United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021). Indeed, judges in this District have repeatedly rejected a defendant's attempt to rely on the entrapment-by-estoppel defense to counterbalance the strength of the government's case during a challenge to the defendant's pretrial detention. *See also United States v. Chansley*, 525 F. Supp. 3d 151, 168 (D.D.C. 2021) ("The Court need not dwell on defendant's invocation of the estoppel by-entrapment defense. The same argument was raised and rejected in another case involving a participant in the January 6th events, and the Court adopts the reasons for rejecting that argument set forth there by Chief Judge Beryl Howell.").

This Court has granted a similar motion in *limine* in another January 6 case and should follow the same course here. *See, e.g., United States v. Grillo*, Case No. 1:21-cr-690-RCL, Minute Entry dated Nov. 17, 2023 (precluded a January 6 defendant from invoking the entrapment-by-estoppel defense at trial, ECF 48). On at least two occasions, other judges of this District have precluded defendants from raising one or both defenses at trial. Judge Walton, applying the case law described below, precluded a January 6 defendant from invoking the entrapment-by-estoppel

and public authority defenses at trial. *See United States v. Thompson*, No. 21-cr-161-RBW, Dkt. 69 at 3-4 (D.D.C. Mar. 25, 2022). Judge Kollar-Kotelly did the same with respect to the first of those defenses. *United States v. Grider*, No. CR 21-022 (CKK), 2022 WL 3030974, at *2-4 (D.D.C. Aug. 1, 2022). As demonstrated by those cases, judges of this District have determined well in advance of trial that those defenses can and should be precluded. The question of whether a defendant may seek to introduce evidence in support of public authority and/or entrapment by estoppel defenses presents a threshold legal determination for the judge, and not the trier of fact, to adjudicate. Where, as a here, the defendants cannot meet their threshold burden, the Court should preclude the defendants as a matter of law from making arguments or attempting to introduce non-relevant evidence in support of those affirmative defenses.

As a matter of law, neither defense could apply on these facts and so the Defendants cannot invoke either at trial. The entrapment-by-estoppel defense applies only if the defendant was "actively misled . . . about the state of the law defining the offense," and relied on that misleading advice. *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018). No such advice was given to the Defendants on or before January 6, and the Defendants have not proffered any evidence to the contrary. The public authority defense, meanwhile, applies only to a "defendant who knows the conduct he has been authorized to commit is illegal," but believes he is acting as an agent of a government official who possessed actual authority to order his conduct. *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015). The defense is

> narrowly defined . . . and a defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites. First . . . a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue, and the defendant must have reasonably relied on that authorization when engaging in that conduct. Second, the government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question.

*Id.* at 484. Here, no executive official had actual authority to ask the Defendants to unlawfully enter the Capitol, to wander through the Senate hallways, and to engage with other rioters, despite the alarms and disruptive conduct of the rioters, and running past law enforcement to exit the Capitol when law enforcement was trying to clear the building. Moreover, both defenses also require that the Defendants' reliance or belief be reasonable. Even if the Defendants believed that former President Trump authorized them to engage in illegal conduct, or that the statutes they are now charged with violating had been interpreted to permit their conduct, neither belief would be reasonable.

"In a variety of procedural contexts, the vast majority of cases have held, as a matter of law, that the defense was unavailable on the facts of the case." *United States v. Conley*, 859 F. Supp. 909, 926 (W.D. Pa. 1994). Courts have routinely rejected either jury instructions or requests to put on evidence by defendants whose proffered evidence fails, as a matter of law, to meet the defenses' requirements. *E.g.*, *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994) (affirming denial of motion to appoint psychological expert to testify in support of entrapment by estoppel defense); *United States v. Weitzenhoff*, 35 F.3d 1275, 1290 (9th Cir. 1993) (upholding refusal to instruct jury on entrapment-by-estoppel defense); *United States v. Brebner*, 951 F.2d 1017, 1024-27 (9th Cir. 1991) (affirming exclusion of evidence purporting to raise the defense as immaterial as a matter of law); *United States v. Etheridge*, 932 F.2d 318, 320-21 (4th Cir. 1991) (order granting motion in *limine* precluding evidence upheld).

In *United States v. Thompson*, No. 21-cr-161-RBW, the defendant was charged with Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and (2) (Count One); Theft of Government Property under 18 U.S.C. § 641 (Count Two); Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1) (Count Three); Disorderly and Disruptive

Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2) (Count Four); Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D) (Count Five); and Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G) (Count Six). In early January 2022, Thompson filed a pretrial motion seeking to have the U.S. Marshals Service serve subpoenas on former President Trump and others (including Rudolph Giuliani and other members of the former President's "inner circle"). *Id.* Dkt. 44 at 2. Judge Walton denied that motion, *id.* Dkt. 51, and directed Thompson to explain why those witnesses had relevant testimony. Thompson's filing asserted, in relevant part, that he intended to rely upon their testimony in support of two affirmative defenses: public authority and entrapment by estoppel.  In response, the United States argued that the defendant should be precluded from asserting both defenses. Judge Walton agreed and issued an order finding that the "testimony of the putative witnesses . . . is inadmissible in support of either of the first two versions of the public authority defense as described by the defendant." *Id*. Dkt. 69 at 2.

At trial, the jury heard evidence of certain statements made by former President Trump and Rudolph Giuliani on January 6, 2021, but the Court cautioned the jury that such statements "had been admitted for a limited purpose" and instructed the jury that "[y]ou're not to consider that evidence for any other purposes. Neither former president Donald Trump nor Rudy Giuliani actually had the power to authorize or make legal the alleged crimes charged in this case." April 14, 2022 Transcript at 618-619. The Court did not instruct the jury on the public authority or entrapment-by-estoppel affirmative defenses.

Likewise, in *United States v. Grider*, No. CR 21-022 (CKK), the defendant was charged with Civil Disorder under 18 U.S.C. § 231(a)(3) (Count One); Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and (2) (Count Two); Destruction of Government

Property under 18 U.S.C. § 1361 (Count Three); Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2) (Count Five); Engaging in Physical Violence in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(4) (Count Six); Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D) (Count Seven); Act of Physical Violence in the Capitol Grounds or Buildings under 40 U.S.C. § 5104(e)(2)(F); and Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G) (Count Nine). On June 22, 2022, Grider filed a "Notice of Intent to Raise Public Authority Defense," *id.* Dkt. 102, and the following day, Judge Kollar-Kotelly issued a Minute Order directing legal briefing on the issue. On July 7, 2022, Grider filed his "Brief in Support of Defendant's Notice of Intent to Raise Public Authority Defense." *Id*. Dkt. 108. In his brief, Grider pointed to language from former President Trump's speech on January 6, 2021, as the basis for his assertion of the affirmative defense. *Id*. at 3. The Government filed its opposition on July 20, 2022, noting that the entrapment-by-estoppel defense applies only where a defendant was "actively misled . . . about the state of the law defining the offense" and relied upon that misleading advice, and asking that the Court preclude the defense in advance of trial. *Id*. Dkt. 111 at 6 (citing and *quoting United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).

Judge Kollar-Kotelly rejected Grider's proposed affirmative defense and issued a Memorandum and Order explaining that "[b]ecause no such defense is available under Defendant's proffered facts, the Court shall not read an entrapment-by-estoppel instruction to the jury." *United States v. Grider*, 2022 WL 3030974, *1 (D.D.C. Aug. 1, 2022) (Kollar-Kotelly, J.). In particular, Judge Kollar-Kotelly cited and quoted Chief Judge Howell's description of the defense as requiring the defendant to meet four separate elements:

> To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (internal quotations and brackets omitted) (*quoting Cox*, 806 F.3d at 1191). In that case, the Chief Judge's analysis focused on the fourth element, namely, whether reliance upon former President Trump's statements was reasonable. *Id.* 31-33. In *Grider*, however, Judge Kollar-Kotelly focused on the first, rather than final prong, to reject the applicability of the affirmative defense, observing that "[r]egardless of whether Defendant can satisfy the fourth prong, reliance, he certainly cannot satisfy the first prong, that President Trump 'actively misled him about the state of the law.'" *Grider*, 2022 WL 3030974, *3.

Here, the Defendants cannot meet the requirements set out by Chief Judge Howell in *Chrestman*. To start, the Defendants have not and cannot point to any government official who advised them that their conduct was legal or who provided any interpretation of the law that covered their alleged criminal conduct. Former President Trump's speech on January 6 could not serve this purpose. As but just two examples, former President Trump did not state that the U.S. Capitol grounds were no longer "restricted" under 18 U.S.C. § 1752(a), nor that efforts to corruptly obstruct the certification of the Electoral count would be permissible notwithstanding 18 U.S.C. § 1512(c)(2). He therefore did not "actively mis[lead]" defendants "about the state of the law defining the offense." *Cox*, 906 F.3d at 1191. The Defendants have not identified anyone else who might have authority to do so who did so either.

18

Just as "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters," no member of law enforcement could use his authority to allow individuals to enter the Capitol building during a violent riot, and after "obvious police barricades, police lines, and police orders restricting entry at the Capitol" had already been put in place by the United States Capitol Police and the Secret Service. *Id*. at 32. Indeed, Judge Howell ruled in another January 6, 2021, case that "the logic in *Chrestman* that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States v. Williams*, No. 21-cr-377-BAH, at *2 (D.D.C. June 8, 2022).

Here, the unambiguous video footage demonstrates that no police officers were immediately outside or inside the Senate Wing Door when Defendants breached the door. And, in any event, more fundamentally, even if the Defendants could somehow establish that a member of law enforcement told them that it was lawful to enter the Capitol building or allowed them to do so, any reliance on any such (hypothetical) statement would not be reasonable in light of the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F. Supp. 3d at 32. Moreover, the Defendants' actions belie any argument that they actually relied on any such statement by law enforcement when they made a decision to unlawfully enter the Capitol building through the broken door with a piercing alarm sounding.

B.    This Court should preclude any public authority claim or defense.

The Defendants should also be prohibited from making arguments or attempting to introduce evidence that law enforcement gave them permission to enter the U.S. Capitol. The government notes that the Defendants have not given notice of a Public Authority Defense

pursuant to Federal Rule of Criminal Procedure 12.3(a). The government requests that the Court instruct the Defendants to assert any claim under Fed. R. Crim. P. 12.3(a) here or be barred from making such claim at trial. As reasoned in *Chrestman*, "*Cox* unambiguously forecloses the availability of the defense in cases where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority." *Chrestman*, 525 F. Supp. 3d at 32 (*quoting Cox v. Louisiana*, 379 U.S. 559, 569 (1965)).

"The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied' on the "actual authority of a government official to engage him in a covert activity.'" *United States v. Fulcher*, 250 F.3d 244, 253-54 (4th Cir. 2001); Fed. R. Crim. P. 12.3(a)(1). "The difference between the entrapment by estoppel defense and the public authority defense is not great." *Burrows*, 36 F.3d at 882; *United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The elements that comprise the two defenses are quite similar."). Any such defense would fail for the same reasons identified above.

First, "[t]he validity of" the public-authority "defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]." *Burrows*, 36 F.3d at 881-82 (*quoting Baptista-Rodriguez*, 17 F.3d at 1368 n.18).[1] The

---

[1] In *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam), the court reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office. The defendants claimed they did so at the behest of E. Howard Hunt, a long-time CIA agent who worked under the supervision of John Ehrlichman in the White House. *North*, 910 F.2d at 879. The case featured fractured separate opinions from the three-judge panel. Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense. *Id.* (*quoting Barker*, 546 F.2d at 949 (opinion of Wilkey, J.). But that portion of *Barker* was not the controlling rationale, and the panel majority in *North* subsequently rejected North's request for an instruction invoking his superiors' "apparent authorization of his action." *Id.* at 881. In any event, Judge Wilkey's application of reasonable reliance in *Barker*—where the defendants, each of whom

20

circuits that have considered the issue are unanimous on that point. Neither the President nor any other Executive Branch official has the authority to empower citizens to enter restricted Capitol grounds, assault Capitol Police officers, or obstruct congressional proceedings. *E.g.*, *North*, 910 F.2d at 891 n.24.

Second, "a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere." *Burrows*, 36 F.3d at 882; *Fulcher*, 250 F.3d at 254; *Sariles*, 645 F.3d at 318-19. Again, any reliance on an Executive Branch official's statements would here be objectively unreasonable for the reasons given above, and again, the Defendants should be precluded from raising this defense as a matter of law.

II.   THIS COURT SHOULD PRECLUDE THE DEFENDANTS FROM ARGUING THAT ALLEGED INACTION BY LAW ENFORCEMENT OFFICERS MADE THEIR CONDUCT ON JANUARY 6, 2021, LEGAL.

In addition to prohibiting any defense argument that law enforcement officers actively communicated to the Defendants that entering the Capitol building or grounds was lawful, the Court should also bar the Defendants from arguing that any failure to act by law enforcement rendered their conduct legal. This Court has granted a similar motion in *limine* in another January 6 case and should follow the same course here. *See, e.g., United States v. Grillo, Case No. 1:21-cr-690-RCL*, Minute Entry dated Nov. 17, 2023 (precluded a January 6 defendant from arguing alleged failure to act by law enforcement as defense at trial, ECF 48). The same reasoning that applied in *Chrestman* again applies here. That is, like the Chief Executive, a Metropolitan Police Officer or Capitol Police Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her purported inaction. *Chrestman*, 525 F. Supp. 3d at 33. An officer

had worked with the CIA, claimed that a government official (and previous CIA supervisor) authorized what they allegedly were told was a counter-espionage operation—has no analogue here.

cannot shield an individual from liability for an illegal act by failing to enforce the law or ratify unlawful conduct by failing to prevent it. Indeed, another judge of this District expressly reached that conclusion recently. *United States v. Williams,* No. 21-cr-377-BAH, at *3 ("Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct."). This Court should apply the same principle in this case. Accordingly, the Defendants should be prohibited from arguing that their conduct was lawful because law enforcement officers allegedly failed to prevent it or censure it when it occurred.

III.     THIS COURT SHOULD PRECLUDE THE DEFENDANTS FROM ARGUING OR PRESENTING EVIDENCE OF ALLEGED INACTION BY LAW ENFORCEMENT OFFICERS UNLESS THE DEFENDANTS SPECIFICALLY OBSERVED OR WAS OTHERWISE AWARE OF SUCH CONDUCT.

The government acknowledges that the conduct of law enforcement officers may be relevant to the Defendants' state of mind on January 6, 2021. However, unless Defendants show that, at the relevant time, they specifically observed or was otherwise aware of some alleged inaction by law enforcement, such evidence is irrelevant to the Defendants' intent. Federal Rule of Evidence 401 states that evidence is relevant if it "has any tendency to make a fact more or less probable … and the fact is of consequence in determining the action." Fed. R. Evid. 401.

Here, if the Defendants were not aware of law enforcement's alleged inaction at the time of their entry onto restricted grounds or into the Capitol building (or at the time they committed the other offenses charged in the Indictment), any alleged inaction would have no bearing on the defendants' state of mind and therefore would not meet the threshold for relevance. The Court should exclude testimony and evidence of any alleged inaction by the police as irrelevant, except to the extent the Defendants show that they specifically observed or was aware of the alleged inaction by the police when they committed the offenses charged in the indictment.

The Defendants breached the restricted perimeter of the Capitol and confronted police outside the Capitol building twice before entering the Capitol Building, first on the West side of the Capitol near the West Plaza, and second, when Defendants crossed a police barricade at the top of the stairs leading to the Upper West Terrace. Even after these confrontations, when Defendants breached the Capitol Building when they entered the Senate Wing door—an Emergency Exit—with the alarm blaring and broken windows. That is where they breached the Capitol Building, and no subsequent claimed contact or conversation can ratify their illegal entry.

## CONCLUSION

For the reasons set forth herein, the government respectfully requests that this Court preclude improper argument or evidence related to (1) entrapment, (2) entrapment by estoppel, (3) any Public Authority defense, (4) and claim that law enforcement's alleged inaction rendered the defendants' actions lawful, and (5) any evidence or argument relating to alleged inaction by law enforcement except to the extent that the Defendants specifically observed or were otherwise aware of such conduct at the relevant time.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ Lynnett M. Wagner
LYNNETT M. WAGNER
Nebraska Bar No. 21606
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: (402) 661-3700
Email: lynnett.m.wagner@usdoj.gov