UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | ) | CASE NO.: 22CR00019-RCL |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| ROBERT TURNER, | ) | |
| Defendant. | ) | |

**DEFENDANT TURNER'S MOTION FOR JUDGMENT OF ACQUITTAL**

The Defendant, **ROBERT TURNER**, through undersigned counsel and pursuant to Rule 29, Federal Rules of Criminal Procedure, moves for Judgment of Acquittal on Counts 4, 6 and 7, and as grounds therefore states:

**INTRODUCTION**

Rule 29, Federal Rule of Criminal Procedure, permits a District Court to enter a judgment of acquittal on any count of conviction if it finds that the evidence on that count is "insufficient to sustain a conviction." Fed. R. Crim. P. 29. In reviewing a motion for judgment of acquittal, the Court must view all evidence in the light most favorable to the Government, giving it the benefit of all reasonable inferences. *See United States v. Singleton*, 702 F.2d 1159, 1163 (D.C.Cir.1983); *see also United States v. Fennell*, 53 F.3d 1296, 1298 (D.C.Cir.1995).

**ACQUITTAL AS TO COUNT VII**

## The *Fischer* decision

The Supreme Court today held that to prove a violation of §1512(c)(2) as alleged in Count 7, the government must show that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in an official proceeding, or attempted to do so.

In this case as in *Fischer*, the government relied on a provision that made it a crime to "otherwise obstruct, influence, or impede any official proceeding, or attempt to do so."

That provision is preceded by a provision that makes it a crime to "alter, destroy, mutilate, or conceal a record, document, or other object, with the intent to impair the object's integrity or availability for use in an official proceeding."

The list in the first provision, the Court reasoned, limits the scope of the second provision.

Mr. Turner was charged in Count 7 with violating §1512(c)(2) for his conduct on January 6, 2021. The evidence at trial showed that on that day, Congress convened in a joint session to certify the votes in the 2020 Presidential election. While they did so, a crowd of supporters of then-President Donald Trump gathered outside the Capitol, and some simply entered the building after others gained entry by breaking windows. This breach of the Capitol, the evidence showed, delayed the certification of the vote. The evidence at trial also showed that Turner, like Fischer,

was among those who entered the building. Turner remained in the Capitol for less than 3 minutes and mostly occupied that short period of time recording events on his phone. He entered through one doorway, walked down a hallway and exited through another, never straying into any room within the Capitol.

Prior to trial, Turner moved to dismiss Count 7 arguing that the provision criminalizes only attempts to impair the availability or integrity of evidence. This Court denied the motion.

The Court's opinion today condemned the government's "unbounded interpretation" of sub section (c)(2) finding that it upset the careful delineation of different types of obstructive conduct. The government's lumping together of disparate types of conduct for which Congress had assigned proportionate sentences rendered the statute "superfluous."

Moreover, the Court found, the government's theory would also criminalize a "broad swath of prosaic conduct, exposing activists and lobbyist to decades in prison" which then would overstep "the prerogatives of Congress" carrying out the quintessentially legislative act of defining crimes and setting the penalties for them.

Accordingly, the Court found the 1512(c)(2) provision inapplicable and reversed the Circuit Court's reversal of the District Court's granting dismissal of this charge in a January 6 prosecution.

## ACQUITTAL AS TO COUNTS IV AND COUNT VI

### Failure to Prove an Essential Element

In Count 4 the Grand Jury charged Mr. Turner with Civil Disorder by commiting or attempting "to commit an act to obstruct, impede, and interfere *with a law enforcement officer*, that is, Officers C.K. and A.S., officers from the Metropolitan Police Department, lawfully *engaged in the lawful performance of his/her official duties*" during a civil disorder. (emphasis added).  In Count 6 the Grand Jury charged that Mr. Turner did "forcibly assault, resist, oppose, impede, intimidate, and interfere with, *an officer and employee of the United States*, and of any branch of the United State Government (including any member of the uniformed services), and any person assisting such an officer and employee, that is, Officer A.S., an officer from the Metropolitan Police Department, while such person was engaged in and *on account of the performance of official duties…*"   (emphasis added).  Even the most casual reading of each of these charges indicates quite clearly that the victim of each offense must first, be some sort of law enforcement officer or government employee and secondly, be engaged in the performance of a lawful or official duty.

As the Court is well aware, the "victim" A.S. was never identified at trial.  In the light most favorable to the Government, the evidence only excluded that person

4

as either a federal law enforcement officer or federal government employee based on the similar clothing as other Metropollitan Police officers.

Under 2 U.S.C. §1961, the Capitol Police are responsible for policing the Capitol building and grounds. Under this authority, the Capitol Police are authorized to make arrests in the Capitol building or on Capitol grounds for "violations of any law of the United States, of the District of Columbia, or of any State."

Metropolitan Police Department (MPD) is the primary law enforcement agency in the District of Columbia and it has the jurisdiction to investigate criminal offenses committed in the district. While MPD officers can make arrests on Capitol grounds, MPD cannot enter the Capitol grounds to make an arrest in response to a complaint, serve a warrant, or patrol the grounds without the consent or request of the Capitol Police (2 U.S.C. §1961(a)). Per MPD General Order 310.01, investigative responsibilities for crimes committed on the Capitol grounds are the responsibility of the Capitol Police, with the exception of homicide and serious sex offenses, which are jointly investigated by MPD and the Capitol Police

As a general matter, law enforcement officers cannot act ***as law enforcement officers*** outside of their territorial jurisdiction. For example, a Capitol Police officer cannot exercise police authority in the District of Columbia's District 7 just as a Metropolitan Police officer cannot exercise police authority on Capitol grounds. Simply put, they are ordinary citizens. To be sure, the policy reasons for this are, at

5

once, severalfold and logical.  Procedures must be specified in advance in some type of operational plan agreed to by the respective parties or else chaos ensues.  Issues such as chain of command, liability to third parties, immunity, training, use of equipment, employment benefits, and cost reimbursement must be understood in advance.

There are, however, legal mechanisms, such as cooperative or mutual aid agreements, whereby law enforcement officers in one jurisdiction are authorized to enforce laws or provide assistance in another jurisdiction. .

MPD officer Mott testified at trial that he and other officers from his squad arrived at the U.S. Capitol on January 6, 2021, in response to a "1033" from his department,  He stated that, once there, he was part of a police line on the Upper West Terrace of the Capitol where Turner was close by, but that he was not the person with whom any contact was made with Turner.  He did not know the person, outfitted in MPD police gear and later identified as A. Smith, standing next to him. No other witness at trial identified this person either.

Section 7302 of the Intelligence Reform and Terrorism Protection Act of 2004 (42 U.S.C. §5196) authorizes representatives of the federal government; the mayor of Washington, DC; the governors of Maryland and Virginia; and the chief executive officers of a locality in the National Capital Region to enter into, request, or provide

assistance through a mutual aid agreement for, among other things, law enforcement services in support of an emergency or public service event.

The failure of the prosecution in this case to establish that the unknown (and apparently unknowable) victim in Counts 4 and 6 was 1) a law enforcement officer or government employee as alleged in the Indictment and 2) if indeed as such, was, at the time, authorized to act as a law enforcement officer, is fatal to sustaining a conviction on either count.

If the District of Columbia and the Capitol Police have indeed entered into a Mutual Aid Agreement, as authorized by statute, proof of such an agreement was necessary in the Government's case-in-chief to establish the offenses charged. No such proof was entered into evidence at trial and the failure to establish this critical element mandates a judgment of acquittal on Counts 4 and 6.

                              Respectfully submitted,

                              GEORGE T. PALLAS, P.A
                              Counsel for Robert Turner
                              2420 SW 22nd Street
                              Miami, FL 33145
                              305-856-8580
                              305-860-4828 FAX
                              gpallas@beckhamsolis.com

                        By:/s/____*George T. Pallas*_____
                              GEORGE T. PALLAS, ESQ.

## CERTIFICATE OF SERVICE

I certify that on this 28 day of June 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to all parties.

By:/s/___*George T. Pallas*_____  
GEORGE T. PALLAS, ESQ.